UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL AARON DUTCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:23-CV-937 RHH |
| ) | |
| ANNE PRECYTHE, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Self-represented Plaintiff Michael Aaron Dutcher brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court on Plaintiff's motion for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF No. 2. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $1.70. *See* 28 U.S.C. § 1915(b)(1). As Plaintiff is now proceeding *in forma pauperis*, the Court must review his complaint under 28 U.S.C. § 1915. Based on such review, the Court will dismiss the complaint for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). As a result of this dismissal, Plaintiff's pending Motions for Temporary Restraining Order (ECF No. 5) and for Appointment of Counsel (ECF No. 4) will be denied as moot.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff is a prisoner at Potosi Correctional Center ("PCC") in Mineral Point, Missouri. ECF No. 1 at 2. In support of his motion to proceed without prepaying fees and costs, Plaintiff submitted an inmate account statement showing average monthly deposits of $8.50. ECF No. 3. The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $1.70, which is twenty percent of Plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also*

*Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**Case Procedural Background**

On August 10, 2023, Plaintiff filed a motion to remand this case to state court. ECF No. 8. Although Plaintiff initiated this action in federal court, he stated in the motion that he now realized that he was "ill-advised" and he has "become informed through further legal research that [he] should have filed this petition in Washington County Circuit Court." *Id.* at 1. Plaintiff further stated he already has a pending action in Washington County, and should have filed this action "in conjunction with that case, not as a separate case in the district court." He requested that the Court "remove this complaint from this court and remand it" to state court. *Id.*

The Court denied this motion because it cannot remand an action to state court when the action was originally filed here. ECF No. 9. *See Levin v. Com. Energy, Inc.*, 560 U.S. 413, 428 (2010) ("[F]ederal tribunals lack authority to remand to the state court system an action initiated in federal court."; 28 U.S.C. § 1447 (remand is a procedure available for removed cases); *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1017 (8th Cir. 2015) (stating that "a district court has no power to remand a non-removed case to state court").

In the Court's denial of that motion, it ordered Plaintiff to file a motion for voluntary dismissal within twenty-one (21) days if he longer wanted to proceed in this action. ECF No. 9 at 2. In response, Plaintiff filed a letter with the Court stating that he wants to proceed in this matter as it is a separate matter from his pending state court case and deals with "denied access to the courts." ECF No. 10.

## The Complaint and Motion for Temporary Restraining Order

### I. Plaintiff's Background

It is difficult – if not impossible – to understand the allegations of Plaintiff's complaint (ECF No. 1) without reading it in conjunction with his simultaneously filed Motion for Temporary Restraining Order (ECF No. 5). By way of background, Plaintiff is currently a prisoner incarcerated at PCC, in the custody of the Missouri Department of Corrections ("MDOC"). ECF Nos. 1 at 2; 5 at 2. However, prior to September 15, 2021, Plaintiff was in the custody of the Iowa Department of Corrections ("IDOC"). ECF No. 5 at 4. Plaintiff was transferred to MDOC custody under an Agreement based on the Interstate Corrections Compact ("ICC")[1] between the States of Iowa and Missouri – referred to by Plaintiff as the "ICC Agreement." Plaintiff attached a copy of the ICC Agreement, signed in October 2019 by defendant MDOC Director Precythe and the IDOC Director, as an exhibit to his complaint.[2] ECF No. 1-3. The ICC Agreement is a contract between the States of Missouri and Iowa, "undertaken in the confinement, care, treatment and rehabilitation

---

[1]Missouri is authorized to participate in the Interstate Corrections Compact under Missouri Revised Statute §§ 217.525 *et seq.*, which allows the MDOC Director to "enter into a contract … [which] shall have as its objective the establishment of programs whereby persons convicted of crimes in any state party to the agreement[,] may be transferred to and incarcerated in correctional facilities in any other state party to the agreement."

[2]In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

of adult offenders on an interstate basis," under which IDOC-prisoner Plaintiff was transferred into MDOC custody for a period of incarceration. *Id.* at 1.

**II.    Plaintiff's Claims**

Plaintiff brings this civil action under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution against nine defendants associated with MDOC and IDOC, including: (1) Anne Precythe (MDOC Director); (2) David Vandergriff (PCC Warden); (3) Crystal Schmitz (MDOC Director of Central Transfer Authority); (4) DeAnna Duff (MDOC ICC Coordinator); (5) Carey Fox (IDOC ICC Coordinator); (6) Brian Davis (Functional Unit Manager of PCC's Administrative Segregation units); (7) Unknown Bresnahan (MDOC Library Coordinator); (8) Rachel Gettinger (PCC's Housing Unit 1 Case Manager); and (9) Melissa Freeman (PCC Library Manager). *Id.* at 1-3; ECF No. 5 at 2-4. All defendants are sued in their official capacities only. ECF No. 5 at 4.

Plaintiff's complaint contains only a brief summary of his allegations:

> Each respondent, by denying me access to legal materials, denied me access to the courts. Each respondent, by failing to provide me constitutional rights, as stipulated in Section 28 of my ICC Agreement,[3] to legal materials, therefore denied me due process to the terms to my ICC Agreement.

ECF No. 1 at 5. Plaintiff further states on his Civil Cover Sheet that he is being denied due process, denied access to legal materials, and denied access to the courts. ECF No. 1-6.

Plaintiff's motion for a temporary restraining order provides more detailed factual allegations for this suit. ECF No. 5. Plaintiff states that he filed a habeas suit in state court in February 2023 alleging that the "excessive and continuous" amount of time MDOC has kept him in administrative segregation violates the terms of the ICC Agreement. *Id.* at 4. Plaintiff further asserts that the legal materials "collectively denied" to him by the named defendants "directly

---

[3]Section 28 of the ICC Agreement is titled "Responsibility for Legal Proceedings" and states in part that Missouri "shall be responsible for providing the Offenders" from Iowa with "constitutional access to courts in the same manner it provides such access to Offenders not confined pursuant to the Compact." ECF No. 1-3 at 10.

pertain[]" to his state-court habeas matter. ECF No. 5 at 4. Prior to filing his habeas case, Plaintiff requested assistance of defendant case manager Gettinger with getting access to "IDOC institutional policies, procedures, and other IDOC administrative documents" which Plaintiff sought to "consider," "review," and "implement into his argument in the habeas." *Id.*

Plaintiff states that he never received the requested legal materials from Gettinger but he did file his habeas case. However, Plaintiff alleges that his habeas case is "being frustrated and impeded" by his lack of access to the requested materials, and that the materials are "directly involved" in his habeas matter. *Id.* at 5. In March 2023, Plaintiff sent letters to defendants Precythe, Schmitz, and Duff, alleging that the terms of his ICC were being violated. Plaintiff did not receive a reply from any of these three defendants. *Id.* Plaintiff wrote to Duff again in April 2023 requesting copies of legal materials, but he never received a response. *Id.*

In mid-March 2023, Plaintiff filed his first MDOC Special Unit Legal Request. ECF No. 1-5. Plaintiff states that he was requesting, among other things, the IDOC policies and procedures materials. ECF No. 5 at 5. The response, signed by defendant Freeman, "Re: ICC Listing" states: "The information you request is not available on Lexis or in any library resource. Please contact your Interstate Compact Case Manager/Contact." *Id.*

In April 2023 and again in June 2023, Plaintiff sent letters to defendant Carey Fox, the Interstate Compact Coordinator for IDOC, requesting the legal materials. *Id.* In Fox's first response, dated April 28, 2023, she provides a "Copy Fee Charge" estimate for the cost of "copies of several IDOC policies relating to housing statuses and classification as well as commissary inventories," as requested by Plaintiff. ECF No. 1-4 at 2-4. Fox directed Plaintiff to send a money order or check for the estimated balance if he wished to proceed. Fox also told Plaintiff where the IDOC policies are freely available on the internet, in case he had a friend or family member who could access them for him. *Id.* at 2. In Fox's second response, dated July 10, 2023, Fox refers

back to her first response as to how Plaintiff could get "copies of IDOC policies and procedures." *Id.* at 1. Fox also states that she verified with MDOC that their system "contains Iowa statues and codes," and concluded that Plaintiff does "have access to the courts." *Id.*

At some point, Plaintiff filed an Informal Resolution Request ("IRR") alleging that he was being denied these legal materials. ECF No. 5 at 6. When Plaintiff discussed this IRR with case manager Gettinger, he was told that because he is in MDOC custody, "Missouri's administrative rules, not Iowa's" are what is relevant to his conditions of confinement. *Id.* Subsequently, Gettinger told Plaintiff that it was library manager Freeman's responsibility to get him the legal materials he requires.

As such, Plaintiff submitted a second Special Unit Legal Request to the law library, again requesting the "IDOC institutional and departmental policies, procedures, etc." *Id.* Plaintiff received a response from Freeman dated July 11, 2023, which stated in its entirety:

> As the receiving state, we are providing you the same content as what is currently available to all offender[s] housed in the MODOC. The library is only obligated to send any content available in the law library or on the Lexis computers. We have provided what we can, such as IA State Court rules and statutes. The library does not have access to any other state policies. Library has previously advised you of this and to contact the Iowa coordinator assigned to you for further concerns. Please note, MoDOC has no control of how Iowa addresses your concerns. This has been confirmed by Ms. Bresnahan the Library Coordinator in central office.

ECF No. 1-5 at 2.

In terms of relief requested, Plaintiff states that the defendants should be enjoined from denying him "access to the courts by denying or otherwise refusing him access to legal materials that include the State of Iowa Department of Corrections (IDOC) institutional and departmental policies, procedures, and any and all IDOC administrative documents considered legal material that is or would be readily accessible by IDOC prisoners in the IDOC." ECF No. 5 at 1-2. According to Plaintiff, such materials "are necessary for [his] … legal action currently active in a Circuit Court." *Id.* at 2. Plaintiff seeks "preliminary/permanent injunction & TRO & declaratory

relief" but he is not seeking actual damages or punitive monetary damages. ECF Nos. 1 at 6; 1-6 at 1.

**Plaintiff's State Court Habeas Case**[4]

As mentioned above, Plaintiff's state-court habeas matter alleges that the "excessive and continuous" amount of time the MDOC has kept him in administrative segregation violates the terms of the ICC Agreement. ECF No. 5 at 4. Based on a review of Missouri Case.net, the State of Missouri's online docketing system, it appears that Plaintiff is referring to the case: *Dutcher v. Vandergriff*, No. 23WA-CC00028 (24th Jud. Cir. 2023). The docket sheet indicates that this habeas matter was recently dismissed on October 27, 2023, "for the reasons set forth in the Respondent's Response to Show Cause Order." In that Response, the Respondent stated that Plaintiff's habeas petition was not challenging his judgment of conviction and sentence, but instead he was challenging his conditions of confinement at PCC, specifically his placement in administrative segregation. *See Resp. to Order to Show Cause*, at 1 (filed Sept. 28, 2023). The standard for a conditions-of-confinement challenge is that Plaintiff must show cruel and unusual punishment or a denial of minimal life necessities. Under Missouri law, being housed in solitary confinement is not enough to meet this standard. *Id.* at 2 (citing *Cooper v. Gammon*, 943 S.W.2d 699, 708 (Mo. App. W.D. 1997)). Also, the Court found no due process violation from placement in solitary confinement because Plaintiff has no liberty interest in remaining in general population. *Id.* This holding was based in part on Eighth Circuit case law. *Id.* (citing *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996), and *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1995)). Finally, based on an exhibit Plaintiff filed with the state court, that court found Plaintiff's

---

[4]The Court takes judicial notice of these public state records. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district courts may take judicial notice of public state records); *Stutzka v. McCarville*, 420 F.3d 757, 761 n. 2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

placement in administrative segregation was justified by the thirteen conduct violations Plaintiff received since being placed in MDOC custody, his documented "poor institutional adjustment," his lack of cooperation with programming, and his poor behavior. *Id.* at 2-3.

## Discussion

After careful review and liberal construction of Plaintiff's allegations, the Court finds that this case should be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B). Plaintiff here alleges that his lack of access to IDOC policies and procedures harmed his ability to plead and prove his assertions for habeas relief in state court which were based on his alleged "excessive" time in administrative segregation. However, the state court's dismissal of Plaintiff's habeas petition indicates otherwise. The state court found that Plaintiff's administrative segregation placement did not meet the standard for cruel and unusual punishment or constitute a due process violation. This Court cannot think of any way in which knowledge of specific IDOC policies and procedures could have helped Plaintiff provide sufficient factual allegations to sustain either of these claims in state court. As such, Plaintiff has not alleged a sufficient injury for a First Amendment access-to-courts claim to survive initial review here. This case will be dismissed for failure to state a claim.

**I.      Legal Standard for First Amendment Right to Access of Courts Claim**

Under the First Amendment, the freedom to petition the government for redress of grievances includes the right of access to courts. *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 524-25 (2002). To state a claim premised upon denial of access to the courts, a plaintiff must demonstrate that he suffered an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).

The Eighth Circuit has recognized that, when bringing an access-to-courts claim, it is insufficient to merely allege a denial of access to a specific resource, even if the denial is systemic.

*Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (citing *Lewis*, 518 U.S. at 353 n.4).[5]  Instead, the plaintiff must plead and ultimately prove that the lack of the resource deprived him of some specific opportunity to defend himself, or advance a viable legal claim, in a criminal appeal, postconviction matter, or civil rights action. *Id.*  Speculation that injuries might occur or could have occurred is insufficient. *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008).  According to the Eighth Circuit, an example would be an inmate showing that "a complaint that they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a complaint for actionable harm at all." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (citing *Lewis*, 518 U.S. at 351).

**II.     Lack of Relevance of IDOC Policies and Procedures**

Plaintiff here is alleging that the defendants' denial of "necessary legal materials" – specifically, copies of IDOC's policies and procedures – "forced" Plaintiff to file his state habeas case without review of these materials and has prevented him from "adequately" arguing his case in this matter.  ECF No. 5 at 7.  Further, Plaintiff asserts that his habeas case would be "harmed and potentially dismissed" if he did not obtain these materials.  As noted above, Plaintiff's habeas case was recently dismissed by the state court, so this Court anticipates that Plaintiff would now argue the dismissal was a result of not having the requested legal materials.  Plaintiff asserts that defendants' actions in denying him access to these records constitutes a violation of the First Amendment's right to access the courts. *Id.*

First, the Court points out that IDOC policies and procedures are not relevant to a conditions-of-confinement claim for a MDOC prisoner.  As defendant Gettinger attempted to

---

[5] The Court notes that even if Plaintiff were a IDOC prisoner, the same legal standard – based on Eighth Circuit precedent – would be applicable to him because Missouri and Iowa are both part of the jurisdiction of the Eighth Circuit Court of Appeals. *See* 28 U.S.C. § 41.

explain to Plaintiff in regard to his IRR, "Missouri's administrative rules, not Iowa's" are what is relevant to his conditions of confinement. ECF No. 5 at 6. Under the ICC Agreement between IDOC and MDOC regarding the incarceration of Plaintiff, MDOC is only obligated to provide Plaintiff with the same "constitutional access to courts in the same manner it provides such access to Offenders not confined pursuant to the Compact." ECF No. 1-3 at 10. As such, the ICC Agreement guarantees Plaintiff the same access that any other MDOC prisoner has under MDOC policies and procedures.

Although Plaintiff argues that the lack of access to IDOC policies and procedures has hampered his ability to assert certain legal claims in his state court case, Plaintiff never states how such policies would help him make his case. To the extent Plaintiff wishes to argue that MDOC officials have violated some IDOC policy, a violation of prison policy or procedure does not state a constitutional claim because it is well established that there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability).

### III.   No Injury to a Viable Legal Claim

Based on the pleadings before the Court, Plaintiff cannot show that he suffered an actual injury to a viable legal claim as a result of his inability to access the IDOC policies and procedures. The alleged lack of access to the requested materials did not prevent Plaintiff from filing his habeas case in state court. Although Plaintiff argues that the lack of access injured his state court case, Plaintiff cannot demonstrate that his lack of access to these materials resulted in the dismissal of a viable legal claim. As explained by the state court, Plaintiff's habeas petition contained no viable claim. Access to IDOC policies and procedures would not have changed that outcome.

Based on the Missouri state court docket for Plaintiff's dismissed habeas case, for Plaintiff to have alleged a valid conditions-of-confinement claim in that habeas case, he needed to state a violation of the Eighth Amendment's cruel and unusual punishment standard. To establish a claim under the Eighth Amendment, a prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).

As such, for Plaintiff to assert a violation of the Eighth Amendment as required for his state case to survive, he needed to set forth factual allegations sufficient to present a plausible claim that his MDOC administrative segregation placement constituted a "denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. The state court discussed how Missouri case law has established that placement in administrative segregation is not enough, by itself, to meet this standard. *See Cooper v. Gammon*, 943 S.W.2d 699, 708 (Mo. App. W.D. 1997). The Eighth Circuit has also held that placement in disciplinary segregation does not, in and of itself, amount to an atypical and significant hardship. *See Portley-El v. Brill,* 288 F.3d 1063, 1065 (8th Cir. 2002) (the Eighth Circuit has consistently held that disciplinary segregation is not an atypical and significant hardship). Plaintiff's petition needed to provide enough factual allegations to support a claim of inhumane conditions. Nothing in the IDOC policies and procedures would establish sufficient facts pertaining to Plaintiff's conditions of confinement to meet this standard. Therefore, even if Plaintiff had the IDOC materials he alleges that he is being denied, it would not have resulted in any different outcome for his state court case. Plaintiff's state case did not state a legal claim; therefore, no injury to a viable legal claim has been established. When no actual injury

is alleged, dismissal for failure to state a claim is proper.  *See Hartsfield*, 511 F.3d at 832.  For these reasons, Plaintiff's case will be dismissed.

## Conclusion

In Plaintiff's recent filing with the Court, he explained that this case pertains to "being denied access to the courts."  ECF No. 10 at 1.  However, as discussed herein, Plaintiff cannot state a First Amendment denial-of-access-to-courts claim because he has suffered no actual injury to a viable legal claim.  Plaintiff's state habeas case was recently dismissed, but having access to IDOC policies and procedures would not have prevented such dismissal.  As such, the Court will dismiss this case for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED.**  *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $1.70 within **thirty (30) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.  *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to any defendant because the complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against defendants Anne Precythe, David Vandergriff, Chrystal Schmitz, Deanna Duff, Carey Fox, Brian Davis, Ms. Unknown Bresnahan, Rachel Gettinger, and Melissa Freeman are **DISMISSED without prejudice**.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel [ECF No. 4] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Temporary Restraining Order [ECF No. 5] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

*/s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 7th day of November, 2023.